IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERCIA PIASECKI,

    Plaintiff,

v.

SANOFI PASTEUR INC., a corporation, SANOFI-AVENTIS U.S., LLC, a limited liability corporation, and DOES 1–20,

    Defendants.

No. C 17-04101 WHA

**ORDER DENYING MOTION TO TRANSFER**

## INTRODUCTION

In this employment discrimination action, defendants move to transfer venue. Plaintiff opposes. For the reasons herein, the motion is **DENIED**.

## STATEMENT

Defendant Sanofi Pasteur, Inc. hired plaintiff Mercia Piasecki in 2005 as a biological products specialist (Compl. ¶¶ 10–12). In 2011, Piasecki was promoted to the position of public health manager for Northern California, and relocated to San Francisco where she lived between 2011 and 2016 (*Id.* ¶ 13; Dkt. No. 12-1 ¶ 7). While in that position, she primarily worked out of her home, although she also visited clients throughout Northern California (Dkt. No. 12-1 ¶ 7).

In October 2015, Piasecki attended a work conference in San Diego. Her husband, not an employee of defendants, went with her to the San Diego conference. While in San Diego, Piasecki expensed some of her husband's meals and drinks to Sanofi Pasteur, most of which

expenses were allegedly approved by accounting, though whether these expenses should have been billed to Sanofi Pasteur would later become a point of controversy (Compl. ¶ 20, 26).

Meanwhile, in November 2015, Piasecki's doctors discovered a large tumor in her throat and diagnosed her with chordoma, a rare form of bone cancer. She had emergency surgery in late November, and Sanofi Pasteur approved her to take medical leave until May 2016 to undergo additional treatments. Around the time of her surgery, however, Piasecki discovered that she was pregnant. This prevented her from undergoing radiation therapy until after she gave birth, and accordingly she postponed radiation treatment and returned to work in January 2016. In early January, she informed her supervisor, Jeff Armbruster, that she would need to take leave in May to deliver her child, and then take additional leave for surgery and radiation treatment (*id.* ¶¶ 21–22).

On January 27, Armbruster contacted Piasecki and questioned her about the meals and drinks she expensed during her business trip to San Diego the previous October, including asking her whether she had paid for anyone other than herself. Piasecki, after initially equivocating, told Armbruster that her husband had also been at the meals. She offered to pay for his portion out of her pocket, but Armbruster assured her that that was not necessary. A week after discussing the expenses, Armbruster fired Piasecki, allegedly for violating Sanofi's expense reimbursement policy (*id.* ¶¶ 25–27).

After losing her job, Piasecki moved away from San Francisco and has lived in both Florida and Massachusetts in order to be close to medical specialists who can treat her cancer (Dkt. No. 12-1 ¶ 26). Though she no longer lives here, Piasecki and her husband own a condominium in San Francisco, and she has applied to jobs in San Francisco where she plans to return to live (*id.* at 27–28).

Sanofi Pasteur is incorporated in Delaware with its headquarters in Swiftwater, Pennsylvania. Sanofi-Aventis is incorporated in Delaware with its principal place of business in Bridgewater, New Jersey (Compl. ¶¶ 3–4). Piasecki alleges that Sanofi Pasteur and Sanofi-Aventis are subject to common ownership and management, and as such are each others agents and are each liable for Piasecki's alleged harm (*id.* ¶ 6–7). Defendants contend that beginning in

2011, Sanofi Pasteur, not Sanofi-Aventis, was Piasecki's employer, and that the two companies maintain separate corporate identities such that they are not jointly liable, but solely for the purpose of their motion to transfer defendants concede that they are each other's agents (Dkt. 10 at 6 n.2).

**ANALYSIS**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In deciding whether to transfer, district courts must weigh both private factors, which go to the convenience of parties and witnesses, and public factors, which go to the interest of justice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). A non-exhaustive list of factors courts may consider includes "the state that is most familiar with the governing law, [] the plaintiff's choice of forum, [] the respective parties' contacts with the forum . . . the availability of compulsory process to compel attendance of unwilling non-party witnesses, and the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis. *See Stewart Org., Inc.*, 487 U.S. at 29.

Defendants argue, and Piasecki does not dispute, that this action could have been brought in the Middle District of Pennsylvania. This order nevertheless finds that convenience and public interest factors favor Piasecki's chosen venue.

### 1. PLAINTIFF'S CHOSEN FORUM.

Generally, a plaintiff's chosen forum, here the Northern District of California, is accorded substantial weight in deciding whether a transfer is appropriate. *See Decker Coal Co.*, 805 F.2d at 843. As defendant observes, however, there are exceptions to this rule (*see* Br. at 7). Where the plaintiff's chosen venue is not her residence, or the conduct giving rise to claims occurred in a different forum, deference to the plaintiff's choice may be diminished. *Pac. Car &*

3

*Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998). These exceptions are "tied to the notion that plaintiffs should be discouraged from forum shopping." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001) (Judge Vaughn Walker). Defendant argues that both of these exceptions apply, and as a result Piasecki's chosen forum should be accorded little weight.

True, Piasecki no longer lives in San Francisco; nevertheless, she has demonstrated a genuine intent to return to San Francisco, which undercuts defendants' accusations of forum shopping and weighs in favor of paying deference to her chosen forum. After defendants fired Piasecki in 2016, she moved first to Massachusetts, and then to Florida to be closer to medical specialists for cancer treatments (Dkt. 12-1 ¶ 26). Over the course of the year that she has been absent, however, Piasecki has maintained a condominium in San Francisco, and has been applying for jobs here with the intent of returning full time (*id.* ¶¶ 27–28). She also regularly returns to the Bay Area to see one of her doctor's at Stanford Medical Center, and has stated that if she has not moved back into her condominium full time during proceedings in this lawsuit, she has close friends in San Francisco that she can stay with (*id.* ¶¶ 29–31). Based on these sworn representations, Piasecki's choice of forum is due substantial deference.[1]

Nor is defendants' argument that most of the conduct underlying this action took place outside of this district accurate (*see* Br. at 7). Defendants limit what they consider the conduct at issue to (1) Piasecki's alleged abuse of company meal reimbursement policy, which meal took place on a business trip in San Diego, and (2) the companies' creation, and maintenance of their reimbursement policies at headquarters in Pennsylvania (*id.* at 7–8). Defendants ignore that Piasecki worked for them in San Francisco, fell ill in San Francisco, received her cancer treatment and submitted her requests for medical leave in San Francisco, reported to and received instruction from her supervisors in San Francisco (including instruction related to

---

[1] Authorities cited by defendants are not to the contrary. In *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001) (Judge Vaughn Walker), the plaintiff's stated intention to return to the forum was discounted because he was a prisoner who was going to be paroled to a different district upon release. In *Valenzuela v. Sol Grp. Mktg.* Co., No. 2:14-CV-09478-R-VBK, 2015 WL 653086, at *3 (C.D. Cal. Jan. 30, 2015) (Judge Manuel Real), unlike here, the plaintiff gave no sworn statement and made only "vague" allegations suggesting that he intended to return to California.

4

1  defendants' reimbursement policies), put in for her meal reimbursements in San Francisco, and
2  ultimately got terminated in person in San Francisco (*see* Opp. at 8; Dkt. 12-1 ¶¶ 7, 10–12,
3  17–19, 21–22). Substantial conduct giving rise to this action took place in San Francisco, and
4  defendants' attempt to shift the center of gravity of this case to where they authored their
5  corporate policies is unconvincing.

6  This order finds that Piasecki's chosen forum is entitled to significant weight.

### 2. CONVENIENCE OF WITNESSES.

Defendants further argue that the Middle District of Pennsylvania is more convenient for key witnesses, and on that basis the action should be transferred (Br. at 8–9). They observe that current and former human resources representatives and members of Sanofi Pasteur management who were involved in the decision to fire Piasecki live "in and around" the Middle District of Pennsylvania, and are critical to this action because they will be able to testify about the policies governing Piasecki's employment, and the investigation into her alleged misconduct (*id.* at 8).

Numerous key witnesses, however, live outside of the Middle District of Pennsylvania, and remain significantly closer to San Francisco than Pennsylvania. These include five current and former Sanofi employees who live in the Northern District of California from whom plaintiff will seek testimony regarding defendants' expense reimbursement practices (Opp. at 9 n. 1; Dkt. No. 12-1 ¶¶ 34-41). Piasecki also intends to elicit testimony from the surgeon who diagnosed and treated her cancer, and the psychiatrist who treated her after she was fired, both of whom reside in the Northern District of California (Opp. at 9; Dkt. No. 12-1 ¶¶ 51–52).

Finally, Piasecki's direct supervisor, Jeff Armbruster, and John Hjorth, who oversaw expense reporting and reviewed the expense report defendants' allege resulted in Piasecki's termination, both live in Arizona (Dkt. 10-1 and 10-2). Armbruster and Hjorth have declared that traveling to Pennsylvania would not be an inconvenience (*see* Armbruster Decl. ¶ 8; Hjorth Decl. ¶ 6). The much shorter trip to San Francisco would likewise not be inconvenient.

Here, both Piasecki and defendants have identified non-party witnesses who live outside of the subpoena range of each others' preferred venues. Accordingly, this aspect of the witness

convenience analysis remains neutral. Nevertheless, taken in the aggregate, the witness convenience factors weigh in favor of keeping this action in Piasecki's chosen forum.

### 3. ACCESS TO EVIDENCE.

Both parties agree that in the digital age, given the ease with which documents can be transported, access to evidence is a less significant factor in the venue analysis (Opp. at 13; Reply at 8). Here, the evidence at issue is defendants' policy documents and communications, and Piasecki's medical records. Neither party argues that this factor should carry significant weight, or that transmitting this evidence would present any difficulty. Accordingly, this factor is neutral.

### 4. NORTHERN DISTRICT OF CALIFORNIA'S INTEREST IN THE LAWSUIT, AND JUDICIAL ECONOMY.

Finally, the Northern District of California has a strong interest in hearing a wrongful termination suit brought by a former employee and resident of the district who claims that her employer violated her right to work here. The Middle District of Pennsylvania's interest pales in comparison.

Defendants argue that the fact that they have a large workforce in Pennsylvania favors transfer because Pennsylvania has a strong interest in rooting out the type of discrimination alleged here (Br. at 11). No doubt Pennsylvania has a stake in rooting out discriminatory employment practices, but in this action no Pennsylvania employee has made a claim against defendants. Our plaintiff, who has raised a claim, lived and worked in San Francisco, where defendants chose to do business.

Moreover, Piasecki brings nine California state law claims, and two claims under the FMLA. Courts in the Middle District of Pennsylvania are equally equipped to decide matters of federal law. This Court, however, is likely more familiar with California law, and accordingly this factors also weighs in favor of retaining this action. *Van Dusen*, 376 U.S. 645.

Finally, the parties agree that court congestion, and the relative speed to trial is a neutral factor here. Therefore, the public interest factors also favor Piasecki.

**CONCLUSION**

It would not serve the interest of justice to transfer this action to the Middle District of Pennsylvania, nor is the Middle District of Pennsylvania a more convenient forum for this lawsuit. Accordingly, defendants' motion to transfer pursuant to Section 1404(a) is **DENIED**. Because of the possibly fatal condition of Piasecki, the Court will give priority to this case in setting a trial.

**IT IS SO ORDERED.**

Dated: September 22, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE